<u>NOT FOR PUBLICATION</u>

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **SI POWER LLC, a Delaware Limited Liability Company,** | |
| **Plaintiff,** | **Civil Action No. 15-6101 (ES) (JAD)** |
| **v.** | |
| **PATHWAY HOLDINGS MANAGEMENT V, LLC, a Delaware limited Liability Company, and JAMES PLANTE,** | **OPINION ON DEFENDANTS' MOTION TO TRANSFER** |
| **Defendants.** | |

<u>JOSEPH A. DICKSON, U.S.M.J.</u>

This matter comes before the Court upon Defendants Pathway Holdings, Management V, LLC ("Pathway Holdings") and James Plante's (collectively "Defendants") Motion to Transfer Venue to the Southern District of California pursuant to 28 U.S.C. § 1404(a). (ECF No. 2). In accordance with Rule 78 of the Federal Rules of Civil Procedure, the Court did not hear oral argument on Defendants' application. Upon careful consideration of the parties' submissions, and for the reasons stated below, Defendants' Motion to Transfer is **DENIED**.

### I.     BACKGROUND

Plaintiff SI Power LLC ("Plaintiff") is a limited liability company, incorporated in Delaware with its principal place of business in New Jersey. (Compl., ECF No. 5-1, ¶ 1). Defendant Pathway Holdings is a limited liability company, incorporated in Delaware with its principal place of business in California. (Id. ¶ 2). Defendant Plante is domiciled in California and is the principal and/or manager of Defendant Pathway Holdings and the founder, president,

1

and CEO of nonparty Pathway Genomics Corporation ("PGC"). (Id. ¶¶ 3, 4; Plante Decl., ECF No. 2-2, ¶ 1).

### a. 2011 Stock Purchase Agreement Between Plaintiff and PGC

Plaintiff purchased shares of Series C Preferred Stock of PGC under a stock purchase agreement dated September 9, 2011 (the "2011 Stock Purchase Agreement"). (Compl., ECF No. 5-1, ¶ 6; Plante Decl., ECF No. 2-2, Ex. 4). Plaintiff alleges that the purchase of the Series C Preferred Stock was based "on misleading information as to the value of such investment provided to [Plaintiff] by Defendants." (Compl., ECF No. 5-1, ¶ 6). The 2011 Stock Purchase Agreement contains the following forum selection clause:

> This Agreement is to be construed in accordance with and governed by the internal laws of the State of California without giving effect to any choice of law rule that would cause the application of the laws and any jurisdiction other than the internal laws of the State of California to the rights and duties of the parties. **All disputes and controversies arising out of or in connection with this Agreement shall be resolved exclusively by the state and federal courts located in San Diego County in the State of California, and each party hereto agrees to submit to the jurisdiction of said courts and agrees that venue shall lie exclusively with such courts.**

(Plante Decl., ECF No. 2-2, Ex. 4, § 6.3) (emphasis added). The 2011 Stock Purchase Agreement also contains a provision relating to the successors and assigns of the agreement:

> Except as otherwise provided herein, the terms and conditions of this Agreement shall inure to the benefit of and be binding upon the respective successors and assigns of the parties **(including transferees of any Shares)**. Nothing in this Agreement, express or implied, is intended to confer upon any party other than the parties hereto or their respective successors and assigns any rights, remedies, obligations, or liabilities under or by reason of this Agreement, except as expressly provided in this Agreement.

(Plante Decl., ECF No. 2-2, Ex. 4, § 6.2) (emphasis added).

2

### b. 2014 Stock Purchase Agreement Between Plaintiff and Defendant Pathway Holdings

In 2014, Plaintiff, "through its sole owner, Michael Mayman, sought to divest itself of the Pathway Genomics shares which it had purchased in 2011, and to essentially receive a return of its purchase price funds" through an amicable agreement with Defendant Plante. (Compl., ECF No. 5-1, ¶ 8). On July 29, 2014, Plaintiff and Defendant Pathway Holdings entered into an agreement whereby Plaintiff "was to deliver back to Defendant Pathway Holdings . . . [Plaintiff's] 1,174,352 shares of Preferred Stock of [PGC], and, in return, Defendant Pathway [Holdings] would pay [Plaintiff] $2,501,369.76 . . . in two equal payments -- $1,250,684.88 at closing (the 'Closing Payment') and the second payment of $1,250,684.88 on or before October 29, 2014 (the 'Deferred Payment')" (the "2014 Repurchase Agreement"). (Compl., ECF No. 5-1, ¶ 9). Unlike the 2011 Stock Purchase Agreement between Plaintiff and PGC, the 2014 Repurchase Agreement between Plaintiff and Defendant Pathway Holdings does not contain a forum selection clause. (Plante Decl., ECF No. 2-2, Ex. 4, Ex. 5). The 2014 Repurchase Agreement does, however, have an entire agreement provision which states:

> This Agreement constitutes the **full and entire understanding and agreement between the parties** with regard to the subjects hereof and no party shall be liable or bound to any other in any manner by any representations, warranties, covenants and agreements except as specifically set forth herein. **This Agreement supersedes any prior or contemporaneous oral or written agreement between the parties regarding the sale of the Shares.**

(Plante Decl., ECF No. 2-2, Ex. 5, § 9.4) (emphasis added).

Although the Closing Payment was delivered, "Defendant Pathway, at the direction of Defendant Plante, breached its obligation to deliver the Deferred Payment, on or before October 29, 2014, or at any time since[.]" (Compl., ECF No. 5-1, ¶ 10). Defendants contend that Defendant "Pathway Holdings has not made the second payment pursuant to the Re-Purchase Agreement due

3

to its concern that Mayman lacks standing or any authority to accept payment or otherwise act 'on behalf of SI Power.'" (Plante Decl., ECF No. 2-2, ¶ 12).

Plaintiff commenced this matter by filing a Complaint in the Bergen County Superior Court of New Jersey on June 24, 2015. (Notice of Removal, ECF No. 5). Plaintiff alleged causes of actions for: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; and (3) various allegations of Fraud. (Id.). Defendants subsequently removed the action to this Court on August 10, 2015. (ECF No. 5).

On August 13, 2015, Defendants filed a Motion to Transfer Pursuant to 28 U.S.C. § 1404(a). (ECF No. 2). Defendants contend that the 2011 Stock Purchase Agreement's forum selection clause designating California as the appropriate forum should apply, and that this action should be transferred to the Southern District of California. (Def. Br., ECF No. 2-3). Plaintiff opposes, arguing that the 2011 Stock Purchase Agreement's choice of venue provision should be given no credence. (Pl. Opp. Br., ECF No. 9).

## II.    LEGAL STANDARD

Defendants request that this Court transfer this action to the Southern District of California pursuant to 28 U.S.C. § 1404(a). (Def. Br., ECF No. 2-3, at 1). This statute provides, in pertinent part, "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of § 1404(a) is to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (internal quotations and citations omitted). The decision of whether to transfer a case is committed to the trial court's sound discretion. Cadapult

Graphic Sys. v. Tektronix, Inc., 98 F. Supp. 2d 560, 564 (D.N.J. 2000); Days Inns Worldwide, Inc.
v. RAM Lodging, LLC, No. 09-2275, 2010 WL 1540926, at *2 (D.N.J. April 14, 2010).

"When the parties have agreed to a valid forum-selection clause, a district court should
ordinarily transfer the case to the forum specified in that clause." Atlantic Marine Constr. Co.,
Inc. v. United States Dist. Court, 134 S. Ct. 568, 581 (2013). Those forum selection clauses "may
be enforced through a motion to transfer under § 1404(a)." Id. at 579. The United States Supreme
Court's analysis in Atlantic Marine, however, "presupposes a contractually valid forum-selection
clause." Id. at 581, n.5. This Court must, therefore, consider whether a valid forum-selection
clause existed. More specifically, this Court must consider whether the forum selection clause in
the 2011 Stock Purchase Agreement applies to the 2014 Repurchase Agreement.

Defendants argue that they have the right to enforce the forum selection clause in the 2011
Stock Purchase Agreement. (Def. Br., ECF No. 2-3, at 9). As noted above, the 2011 Stock
Purchase Agreement states, "[e]xcept as otherwise provided herein, the terms and conditions of
this Agreement shall inure to the benefit of and be binding upon the respective successors and
assigns of the parties (*including transferees of any Shares*)." (Plante Decl., ECF No. 2-2, Ex. 4,
§ 6.2) (emphasis added). Defendants argue that "Defendant Pathway Holdings is a transferee [and]
[t]hus, the 2011 [Stock Purchase Agreement] gives Pathway Holdings (as a transferee) the right to
enforce the forum-selection clause." (Def. Br., ECF No. 2-3, at 9). Defendants further argue that
Defendant Plante has the right to enforce the forum selection clause because "[t]his Court has
routinely held that non-signatories who are 'closely related to the contractual relationship,' such
as the president of the signatory (here, Defendant Plante), should benefit from and be subject to
the forum selection clause." (Def. Br., ECF No. 2-3, at 9).

5

### a. The Closely Related Doctrine

"Ordinarily, a party not a signatory to a contract cannot be bound by the terms of that contract. As a general matter, the Third Circuit is reluctant to enforce a contractual clause against a non-party, unless 'accepted principals of agency or contract' make it appropriate." Beth Schiffer Fine Photographic Arts, Inc. v. Colex Imaging, Inc., No. 10-cv-5321 (WHW), 2014 U.S Dist. LEXIS 65338, * 9 (D.N.J. May 13, 2014) (quoting E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S., 269 F.3d 187, 194, 202 (3d Cir. 2001)); Bedwell Co. v. Camden County Improvement Auth., No. 14-cv-1531 (JEI), 2014 U.S. Dist. LEXIS 95510, *8 (D.N.J. July 14, 2014) ("Except for limited circumstances not present here, a contract cannot define the legal obligations between two entities unless those two entities are parties to the contract.").

In the context of forum selection clauses, courts in this District have typically limited enforcement against non-signatories to situations in which the non-signatory is either: (1) a third-party beneficiary of the contract containing the clause; or (2) so closely related to the contractual relationship at issue that the party should be able to foresee that courts will enforce the clause against it. See, e.g., Beth Schiffer Fine Photographic Arts, Inc., 2014 U.S. Dist. LEXIS 65338 at *9-10; Donachy v. Intrawest U.S. Holdings, Inc., No. 10-4038 (RMB), 2011 U.S. Dist. LEXIS 79567, *6-7 (D.N.J. July 21, 2011) (collecting cases and noting enforcement of forum selection clauses against related parties and third party beneficiaries); cf. D'Elia v. Grand Caribbean Co., No. 09-cv-1701 (NLH) 2010 U.S. Dist. LEXIS 32230, *10 (D.N.J. Mar. 30, 2010) (noting that a non-party to a contract may enforce a forum selection clause contained in that contract "if that party is a third-party beneficiary of the contract or is closely related to the contractual relationship or dispute such that it is foreseeable that the party will be bound."). Defendants do not claim that Defendant Plante is a third-party beneficiary, but rather the Defendant Plante is so closely-related

to the contractual relationship between Plaintiff and PGC that Defendant Plante should be able to enforce the 2011 forum selection clause. (See generally Def. Br., ECF No. 2-3, at 9).

Several courts in this District have analyzed the closely related doctrine and their guidance is instructive. In Affiliated Mortg. Prot., LLC v. Tareen, No. 06-4908 (DRD), 2007 U.S. Dist. LEXIS 5106, **4, 12-15 (D.N.J Jan. 23, 2007), a case upon which Defendants rely, the Hon. Dickinson R. Debevoise, U.S.D.J., found that, where a four-employee corporation and the plaintiff previously entered into a contract that contained a forum selection clause, that corporation's employees, who had directly benefitted from that contract by utilizing the sales leads that the plaintiff provided thereunder to obtain commissions, were therefore sufficiently "closely related" to that contractual relationship that it was appropriate for the District Court to subject those employees to the forum selection clause. Judge Debevoise clarified that the employees received a "continuing benefit" under that contract (i.e., the sales leads), and that they were therefore "bound by the forum selection and choice of laws clause because the claims arise out of the contract from which [those employees] derived benefit." Id. **12-13.

In Donachy, 2011 U.S. Dist. LEXIS 79567, the Hon. Renee M. Bumb, U.S.D.J., addressed an analogous situation in which the defendants sought to utilize the "closely related" doctrine to enforce a forum selection clause to which they were not themselves signatories. Those defendants had worked to market and sell certain condominium units to the plaintiffs, who eventually purchased property directly from the condominium developer, non-party Cherokee Limited. Id. at **2-3. In purchasing their units, the plaintiffs entered into contracts with Cherokee Limited, and those contracts contained a mandatory forum selection clause specifying that the Turks & Caicos Islands would have exclusive jurisdiction over all claims arising out of the parties' agreements. Id. at *3. The plaintiffs later filed suit seeking to recover their deposits and other out-

of-pocket losses, claiming that they purchased property from Cherokee Limited (which had declared bankruptcy and was therefore not named as a party) in reliance on the defendants' alleged misrepresentations. Id. at \*\*2-4. The defendants sought to enforce the forum selection clauses contained in the agreements between Cherokee Limited and the various plaintiffs, arguing that they were "closely related" to those contractual relationships given their roles in the marketing and sales process. Id. at \*\*6-8. Judge Bumb disagreed, finding that the "closely related" doctrine did not apply because: (1) the agreements did not reference the defendants; (2) the defendants did not incur any obligations under those agreements; and (3) the contracting parties' were required to perform under the agreements irrespective of the defendants' services (i.e. the agreement specified that any prior marketing-related representations were not incorporated into the agreements). Id. at \*10. The court also found that the defendants had failed to establish an alternate ground for permitting enforcement, such as that the defendants were acting as agents of the signatory or were third-party beneficiaries of the contracts at issue. Id. Finally, Judge Bumb clarified that application of the "closely related" doctrine turns on the extent of a party's connection to the terms of the contract containing the forum selection clause, and that the fact that a party played some role, even an important one, in the overarching factual scenario is insufficient. Id. ("Defendants may have been instrumental in soliciting Plaintiffs to enter into agreements with Cherokee, but Defendants' relationship to Plaintiffs is simply not sufficiently related to the Agreement at issue here.").

The Hon. Noel L. Hillman, U.S.D.J.'s, decision in Cambridge Mgmt. Grp., 2013 U.S. Dist. LEXIS 44055, provides further guidance on the limited applicability of the "closely related" doctrine. In Cambridge, certain law firm defendants sought to avoid application of a forum selection clause on the grounds that they never signed the primary agreement containing that

provision. Id. at **27-28. Judge Hillman found that, while the defendants were not parties to that primary contract, they did sign an ancillary agreement through which they acknowledged receipt of the primary contract and agreed to discharge certain duties in accordance with the terms of that primary contract. Id. at **28, 31-33. Given the explicit cross-referencing and interdependence of the contracts at issue, Judge Hillman found that the law firm defendants were "on notice that terms of the [various contracts] were all necessarily and directly related to the litigation funding transaction in which they participated." Id. at *34. Judge Hillman noted that the law firm defendants' alleged failure to fulfil those contractual obligations formed the basis of the plaintiffs' claims. Id. at *31-32. In turn, given the idiosyncratic circumstances at issue in the case, and the law firm defendants' obvious, direct involvement in the contractual relationships at issue (i.e., the defendants' alleged failure to fulfil certain duties as required under the primary contract containing the forum selection clause), Judge Hillman found it appropriate to apply the forum selection clause to those defendants. Id. at * 34-35.

In PNY Tech., Inc. v. Miller, Kaplan, Arase & Co., LLP., No. 14-4150 (ES), 2015 U.S. Dist. LEXIS 38140 (D.N.J. Mar. 24, 2015), the Hon. Michael A. Hammer, U.S.M.J., permitted a non-signatory to enforce a forum selection clause under similar circumstances. In that case, an underlying licensing agreement between PNY Tech. Inc. and SanDisk permitted SanDisk to retain an independent party to audit PNY Tech. Inc.'s royalty payments, and contained a forum selection clause requiring any litigation concerning that agreement to be brought in the United States District Court for the Northern District of California. Id. at **2, 7. Though the agreement did not identify a particular auditor, it "define[d] all of [the auditor's] responsibilities" and dictated the logistics of the audit process. Id. at *18. Judge Hammer ultimately found that, though PNY Tech., Inc. sued the auditor for breach of an interrelated non-disclosure agreement, and not the licensing agreement

9

itself, the non-signatory auditor could enforce the forum selection clause contained in the licensing agreement in accordance with the "closely related" doctrine. (Id. at *18-21). In reaching that decision, Judge Hammer stressed that the auditor had undertaken duties set forth in the underlying licensing agreement. Id. at *21 ("Because MKA's duties and interests as the 'independent Third Party accounting firm' arise from the License Agreement, MKA is closely related to the contractual relationship between SanDisk and PNY.").

In Beth Schiffer Fin Photographic Arts, Inc., 2014 U.S. Dist. LEXIS 65338, the Hon. William H. Walls, U.S.D.J., addressed the "closely related" doctrine, which His Honor explicitly labeled as a "narrow one." Id. at *13. The plaintiff alleged claims regarding its purchase (through an American dealer) of a photographic processing and printing machine manufactured and marketed by an Italian entity. Id. at **1-3. The transaction between the Italian manufacturer and the American dealer appears to have been governed by a forum selection clause requiring any disputes concerning that transaction to be brought in Italy. Id. at **1-2, 4. In moving for summary judgment, the Italian manufacturer argued, in part, that the non-signatory plaintiff was also bound by the forum selection clause under the "closely related" doctrine, as it had received certain benefits under the manufacturer/dealer contract and, therefore, the plaintiff could not maintain any of its claims in the United States District Court. Id. at **7-8. Judge Walls noted that "[c]ourts in this district typically find that non-signatories are 'closely related' only in the context of an individual non-signatory who is employed by – or the principal of – a corporate entity which is a signatory." Id. (citations omitted). As the plaintiff did not fit into either of those "narrow" categories, Judge Walls found that the "closely related" doctrine was inapplicable and that the plaintiff was not subject to the forum selection clause. Id. at **13-14.

In addition to relying on Affiliated Mortg., 2007 U.S. Dist. LEXIS 5106, Defendants also rely upon Foley & Lewis Racing, Inc. v. Burling, No. 07-972 (JEI), 2008 WL 544655 (D.N.J. Feb. 27, 2008) and Four River Expl., LLC v. Bird Res., Inc., No. 09-3158 (JAP), 2010 WL 216369 (D.N.J. Jan. 15, 2010) for the proposition that "as the president of the signatory . . . [Defendant Plante] should benefit from and be subject to the forum selection clause." (Def. Br., ECF No. 2-3, at 9). Both cases are, however, distinguishable from the case at hand. In Foley & Lewis Racing, Inc., the Hon. Joseph E. Irenas, U.S.D.J., found that an owner and CEO of a company, who signed an agreement with the plaintiff on behalf of his company, was so closely related to the contractual relationship, that the forum selection clause applied to him as a third party and he was able to enforce it. 2008 WL 544655, at *3. There were, however, two contracts in that case, the second of which contained the forum selection clause and Judge Irenas found to be controlling. Id. at *2. Likewise here, as explained in more detail below, the 2014 Repurchase Agreement is controlling and contains no forum selection clause. The closely related doctrine cannot be used to circumvent the second contract in an attempt to enforce the provisions in the first.

In Four River Expl., the Hon. Joel A. Pisano, U.S.D.J., remanded a case to the Superior Court of New Jersey given the forum selection clause in the parties' contract. 2010 WL 216369, at *1. In that case there were two defendants, a company and its president. Id. Judge Pisano found the company's president to be so closely related to the contract because he was "very substantially involved in providing the services required by the parties' Agreement. [The individual defendant's] position as president and his involvement with the services outlined in the Agreement make it foreseeable that he would be required to appear in a court located in Ocean County, New Jersey." Id. at *3. As with Foley & Lewis Racing, Inc., the very fact that this case involves two contacts

makes it distinguishable. The closely related doctrine is a narrow doctrine that does not apply under the present circumstances.

Both parties fail to recognize that the 2014 Repurchase Agreement contains an Entire Agreement provision which states, "[t]his Agreement **supersedes** any prior or contemporaneous oral or written agreement between the parties regarding the sale of the Shares." (Plante Decl., ECF No. 2-2, Ex. 5, § 9.4) (emphasis added). This contract is unambiguous and, therefore, the Court need not consider any evidence outside of its four corners. See Sanford Inv. Co. v. Ahlstrom Mach. Holdings, Inc., 198 F.3d 415, 421 (3d Cir.1999) ("In determining whether a contract is ambiguous, the court assumes the intent of the parties to an instrument is embodied in the writing itself, and when the words are clear and unambiguous the intent is to be discovered only from the express language of the agreement."). This Court finds that the transferee provision in the 2011 Stock Purchase Agreement is superseded by the 2014 Repurchase Agreement. In light of the Entire Agreement provision, the Court finds that the forum selection clause contained in the 2011 Stock Purchase Agreement does not apply to the 2014 Repurchase Agreement. As a result, Defendant Pathway Holdings cannot enforce the forum selection clause as a transferee and Defendant Plante cannot enforce the forum selection clause under the closely related doctrine with regard to disputes, such as the one at issue in this case, arising under the 2014 Repurchase Agreement.

### b. *Jumara* analysis

Because the forum selection clause does not apply to the 2014 Repurchase Agreement, this Motion to Transfer shall be analyzed under the standard § 1404(a) analysis. In determining whether to transfer a matter pursuant to § 1404(a), and based on the plain language of that statute, a court must consider: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice. Rappoport v. Steven Spielberg, Inc., 16 F. Supp. 2d 481, 497

(D.N.J. 1998). In addition to these statutory factors, the United States Court of Appeals for the

Third Circuit has established a list of public and private interests that a court should examine when

deciding whether to transfer an action::

> The private interests have included: plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).
>
> The public interests have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

Jumara v. State Farm Ins. Co., 55 F.3d 873, 879-80 (3d Cir. 1995)).

The Court must, therefore, engage in a two part analysis to determine whether any motion

to transfer venue should be granted. As a threshold matter, the Court must decide whether the

transferee district has proper jurisdiction and venue, such that the case could have been brought in

the transferee district in the first instance. Lawrence v. Xerox Corp., 56 F. Supp. 2d 442, 450

(D.N.J. 1999). The Court must then conduct an "individualized, case-by-case consideration of

convenience and fairness" regarding which forum is most appropriate to consider the case. Id.

"There is no rigid rule governing a court's determination; 'each case turns on its facts.'" Id. (citing

Lacey v. Cessna Aircraft Co., 862 F.2d 38, 43 (3d Cir. 1988) (internal citations omitted));

Rappoport, 16 F. Supp 2d at 498 ("Transfer analysis under Section 1404 is a flexible and

individualized analysis and must be made on the unique facts presented in each case.") (citing

Piper Aircraft Co. v. Reyno, 454 U.S. 235, 249-250 (1981)). The Court is also mindful of the

Third Circuit's admonition against any court considering the merits of a case during the pendency of a transfer application. McDonnell Douglas Corp. v. Polin, 429 F.2d 30 (3d Cir. 1970) ("Judicial economy requires that another district court should not burden itself with the merits of the action until it is decided that a transfer should be effected and such consideration additionally requires that the court which ultimately decides the merits of the action should also decide the various questions which arise during the pendency of the suit instead of considering it in two courts.").

## III.    ANALYSIS

### a.    This Action Could Have Been Filed in the Southern District of California

28 U.S.C. § 1404(a) provides, in pertinent part, that "a district court may transfer any civil action to any other district or division where it might have been brought." As a threshold issue, therefore, the Court must determine whether venue for these matters would be appropriate in the Southern District of California. If venue is not appropriate in that District, the Court may not effectuate the requested transfers pursuant to 28 U.S.C. § 1404(a).

28 U.S.C. § 1391 sets forth the standards for venue in the United States District Court. See 28 U.S.C. § 1391(a) ("Except as otherwise provided by law . . . this section shall govern the venue of all civil actions brought in district courts of the United States"). In turn, Section 1391(b) provides, in pertinent part, that "[a] civil action may be brought in . . . a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(c) provides in pertinent part that, for venue purposes, an entity "shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question."

Here, Plaintiff has identified Defendant Pathway Holdings as a limited liability company, incorporated in Delaware with its principal place of business in California. (Compl., ECF No. 5-

14

1, ¶ 2). Furthermore, Defendant Plante is domiciled in California. (Id. ¶ 3). Both Defendants are, therefore, subject to personal jurisdiction in California and thereby "reside" there for venue purposes in accordance with 28 U.S.C. § 1391(c). Venue would, therefore, be appropriate in that District. See 28 U.S.C. § 1391(b)(1). The Court also notes that Plaintiff does not dispute the fact that this action could have been filed in the Southern District of California.

### b. The *Jumara* Factors Require that this Motion to Transfer be Denied

Having determined that venue for these cases would be appropriate in the United States District Court for the Southern District of California, the Court must now analyze the private and public interest factors relevant to Defendant's transfer application. As discussed above, the United States Court of Appeals for the Third Circuit enumerated those factors in Jumara, 55 F.3d at 879-80. The Court also notes that Defendants retain the burden of establishing that transfer is appropriate. In re Amendt, 169 F. App'x 93, 96 (3d Cir. 2006).

### i. Private Interest Factors Do Not Weigh in Favor of Transfer

With regard to the "private interest" factors relevant to a 1404(a) analysis, the Third Circuit has directed courts to consider "plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses -- but only to the extent that the witnesses may actually be unavailable for trial in one of the forum; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." Jumara, 55 F.3d at 879-80. The Court will address each of these factors in turn.[1]

---

[1] Notably, Defendants do not make any arguments relating to the private interests at issue in this case. Assuming that this Court would uphold the forum selection clause, Defendants relied on the United States Supreme Court's ruling in Atlantic Marine, which held, in pertinent part:

### 1.  **The Parties' Choice of Forum**

Within the Third Circuit, a plaintiff's choice of forum is a "paramount concern" in deciding

a motion to transfer venue.  Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970).  When a

plaintiff chooses its home forum, that choice is "entitled to greater deference." Sandvik, Inc. v.

Cont'l Ins. Co., 724 F. Supp. 303, 307 (D.N.J. 1989).  Plaintiff is a limited liability company,

incorporated in Delaware with its principal place of business in New Jersey and has chosen one of

its home fora for this litigation.  The Court acknowledges, however, that "when the central facts

of a lawsuit occur outside of the chosen forum, plaintiff's choice of forum is accorded less weight."

NCR Credit Corp., 17 F. Supp. 2d at 321; Melone v. Boeing Co., No. 07-cv-1192 (DMC), 2008

U.S. Dist. LEXIS 25367, *5-6 (D.N.J. Mar. 28, 2008) ("Deference to the plaintiff's selected forum

is also diminished 'where the central facts of a lawsuit occur outside the chosen forum' or the

plaintiff's choice of forum 'has little connection with the operative facts of the lawsuit.'") (quoting

In re Consolidated Parlodel Litig., 22 F. Supp. 2d 320, 324 (D.N.J. 1998)).

---

> [A] court evaluating a defendant's § 1404(a) motion to transfer
> based on a forum-selection clause should not consider arguments
> about the parties' private interests. When parties agree to a forum-
> selection clause, they waive the right to challenge the preselected
> forum as inconvenient or less convenient for themselves or their
> witnesses, or for their pursuit of the litigation.  A court must
> accordingly deem the private-interest factors to weigh entirely in
> favor of the preselected forum . . .
>
> As a consequence, a district court may consider arguments about
> public-interest factors only. Because those factors will rarely defeat
> a transfer motion, the practical result is that forum-selection clauses
> should control except in unusual cases.

134 S. Ct. at 582.  For reasons stated above, the analysis in Atlantic Marine does not apply here
because the forum selection clause is not applicable.  The Court shall, nevertheless, engage in the
analysis of the private interest factors.

Although Plaintiff asserts that "Defendants have repeatedly transacted business in the State of New Jersey, and subjected themselves to the personal jurisdiction of this Court, including through numerous communications and transactions with SI Power and its representatives at issue in this lawsuit", (Compl., ECF No. 5-1, ¶ 5), the parties have not placed sufficient information in the record to allow the Court to determine where the "central facts" of this lawsuit occurred. The Court will not, therefore, reduce the deference afforded to Plaintiff's choice of forum. While the Court acknowledges that Defendants would prefer to litigate in the Southern District of California, Defendants are the moving parties here, and thus bear the burden of persuasion regarding their motions to transfer. Plum Tree, Inc. v. Stockment, 488 F.2d 754, 756 (3d Cir.1973). To overcome the presumption in favor of Plaintiff's choice of forum, Defendants must show that the balance of conveniences weighs "strongly in favor" of transfer to a more convenient forum. Shutte, 431 F.2d at 25. Given Defendants' failure to address these private factors, and in light of this Court's analysis of the factors below, the Court finds that Defendants have not met that burden.

## 2.  Where the Cause of Action Arose

Neither Plaintiff nor Defendants have provided the Court with sufficient guidance as to where the causes of action at issue in these matters "arose." "This factor turns on which forum contains the center of gravity of the dispute, events, and transactions." Depuy Synthes Sales, Inc. v. Gill, No. 13-4474 (JAP), 2013 U.S. Dist. LEXIS 154825, *21 (D.N.J. Oct. 29, 2013) (citing Park Inn Int'l, L.L.C. v. Mody Enters., 105 F. Supp. 2d 370, 377-78 (D.N.J. 2000); accord Master Cutlery, Inc. v. Panther Trading Co., No. 12-4493 (JLL), 2012 U.S. Dist. LEXIS 178639, *9-10 (D.N.J. Dec. 14, 2012) ("'The locus of the alleged culpable conduct determines the place where the claim arose.'") (internal citations omitted).

17

Here, Plaintiff argues that "the claim primarily arose in New Jersey, as there arose multiple contacts in New Jersey between Plaintiff's officer, Michael Mayman and Mr. Plante, and between their attorneys and representatives, by telephone and electronic communications. Plaintiff relied upon Defendants' misrepresentations in entering and continuing this business relationship during this communications in New Jersey." (Pl. Opp. Br., ECF No. 9, at 15) (citing Mayman Decl., ECF No. 10, ¶¶ 20-21, 24-25).[2]

In contract actions, "the factors determining where the claim arose include where the contract was negotiated or executed, where the contract was to be performed, and where the alleged breach occurred." Frato v. Swing Staging, Inc., Civ. A. No. 10–5198, 2011 WL 3625064, at *4 (D.N.J. Aug. 17, 2011) (citing Allianz Life Ins. Co. of N. Am. v. Bleich, Civ. A. No. 08-668, 2008 WL 4852683, at *5 (D.N.J. Nov. 7, 2008)). As neither party as divulged sufficient information for this Court to determine where the cause of action arose, this factor is neutral to the transfer analysis.

### 3. The Relative Convenience of the Parties

This factor requires the Court to examine "the convenience of the parties as indicated by their relative physical and financial condition." Jumara, 55 F.3d at 879. Again, neither party has provided this Court with information regarding this factor. This Court shall not endeavor to make arguments on the parties' behalf. This factor is, therefore, neutral to the transfer analysis.

### 4. The Convenience of the Witnesses and Location of Documents

In connection with public factor considerations, Defendants argue that both PGC and Defendant Pathway Holdings have their principal place of business in California, and therefore,

---

[2] Page 6 of Mayman's Declaration containing paragraphs 20-21 is omitted from the Plaintiff's filing. The information contained therein would not have changed this Court's ultimate decision.

"evidence and witnesses are likely to be more accessible for the parties in the Southern District of California." (Def. Br., ECF No. 2-3, at 11). Plaintiff opposes, arguing that "Defendants vaguely reference party and witness convenience when discussing practice considerations. Defendants have not identified witnesses or evidence which are located in California as opposed to in New Jersey or other locations." (Pl. Opp. Br., ECF No. 9, at 15). Furthermore, Plaintiff argues that Defendants have not met their burden "to show the unavailability of these witnesses and documentation in New Jersey, as opposed to California, let alone the importance of these witnesses to their case." (Id.). This Court agrees. Nothing in the record confirms that any witnesses would be unable or unwilling to travel to either this District or the Southern District of California, which is the sole relevant consideration for this factor under Jumara, 55 F.3d at 879 (holding this factor is only relevant "to the extent that the witnesses may actually be unavailable for trial in one of the fora."). The Court therefore finds that this factor is neutral to the transfer analysis.

Similarly, nothing in the record demonstrates that the relevant documents would be unavailable in either District. See id. The analysis of this factor is limited to "the extent that the files could not be produced in the alternative forum." Id. This factor, therefore, is also neutral.

### ii.    Public Interest Factors Do Not Weigh in Favor of Transfer

In addition to the "private interest" considerations discussed above, the Third Circuit has directed courts to take certain "public interest" factors into account when adjudicating a motion to transfer, including: "the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home, the public policies of the fora, and the familiarity of the trial judge with the applicable state law in diversity cases." Jumara, 55 F.3d at 879-80. The Court will address each of these factors in turn.

### 1.  Enforceability of Judgments

The "enforceability of the judgment" factor is neutral, as a judgment rendered in either this District or the Southern District of California could easily be registered in another district.

### 2.  Practical Considerations Regarding Trial

"[P]ractical considerations are relevant and warrant transfer if they could make the trial easy, expeditious, or inexpensive. One practical consideration that supports transfer is efficiency." Metro. Life Ins. Co. v. Bank One, N.A., No. 03-1882 (SDW), 2012 U.S. Dist. LEXIS 137119, * (D.N.J. Sept. 25, 2012). As noted above, Defendants argue that both PGC and Defendant Pathway Holdings have the principal place of business in California, which is "likely to be more accessible for the parties in the Southern District of California." (Def. Br., ECF No. 2-3, at 11). Plaintiff's principal place of business is, however, in New Jersey. While it may be more accessible for the Defendants to litigate in the Southern District of California, Defendants have not argued why transfer to California would be more efficient, especially in light of Plaintiff's principal place of business in New Jersey. This factor is, therefore, neutral to the transfer analysis.

### 3.  Relative Administrative Difficulty

The Third Circuit also requires that Courts consider the administrative difficulties associated with proceeding in either district, in light of the relative docket congestion of the forum. Jumara, 55 F.3d at 879. Defendants argues that according to the Federal Court Management Statistics of 2014, this Court has significantly more cases than the Southern District of California, and therefore, this factor weighs in favor of transfer. (Pl. Opp. Br., ECF No. 2-3, at 11-12). While this Court recognizes that both Districts have large caseloads, this factor does in fact weigh in favor of transfer. In June of 2015, the filings in this District totaled to 10,435, while the total filings in the Southern District of California totaled to 8,527. See Administrative Office of the

United States Courts, Federal Court Management Statistics 2014: District Courts, available at http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2015/06/30-3. Additionally, the weighted filings per judgeship in this District number 704, while the Southern District of California number 489. See id. Although not dispositive of transfer, this factor is weighed in its favor.

### 4.  Local Interests / Public Policies of the Forum

The Court also finds that the local interests in deciding a local controversy and the public policies of the forum to be neutral in the evaluation of these factors.  Defendants concede that these factors are neutral, (Def. Br., ECF No. 2-3, at 12), and Plaintiff fails to address them.  While the Court recognizes that, "if there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor," In re Hoffmann-La Roche Inc., 587 F.3d 1333, 1338 (Fed. Cir. 2009), the Court has already found that the evidence of record does not establish any such "significant connections."

### 5.  Judges' Familiarity With Applicable State Law

As established above, the 2014 Repurchase Agreement is the controlling agreement between the parties.  There, both Plaintiff and Defendant Pathway Holdings agreed to a choice of law clause, which states: "[t]his Agreement shall be governed in all respects by the laws of the State of Delaware without regard to conflict of law principles." (Plante Decl., ECF No. 2-2, Ex. 4, Ex. 5, ¶ 9.1).  As neither New Jersey nor California law applies here, this Court finds this factor to be neutral to the transfer analysis.

### iii.     The *Jumara* Factors Do Not Weigh in Favor of Transfer

After considering both the private and public interest factors, this Court finds that transfer is not appropriate under 28 U.S.C. § 1404(a).  The overwhelming majority of factors are neutral

to this analysis, as Defendants only addressed the public factors at issue. Specifically, only Plaintiff's choice of forum and relative administrative difficulty have any weight in this matter. Plaintiff's choice of their home forum is "entitled to greater deference", Sandvik, Inc., 724 F. Supp. at 307, especially when compared to the factor regarding court congestion. The Plaintiff's choice of forum is entitled to much deference and tips the otherwise even scale against transferring this matter.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Transfer, (ECF No. 2), is **DENIED.** An appropriate form of Order accompanies this Opinion.

**JOSEPH A. DICKSON, U.S.M.J.**

cc:     Hon. Esther Salas, U.S.D.J.