<u>**NOT FOR PUBLICATION**</u>

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

| | |
|---|---|
| **SI POWER LLC, a Delaware Limited Liability Company,**<br><br>**Plaintiff,**<br>**v.**<br><br>**PATHWAY HOLDINGS MANAGEMENT V, LLC, a Delaware limited Liability Company, and JAMES PLANTE,**<br><br>**Defendants.** | **Civil Action No. 15-6101 (ES) (JAD)**<br><br>**OPINION**<br>**SUA SPONTE RECONSIDERATION OF THE COURTS OPINION DATED MARCH 31, 2016 (ECF NO. 16)** |

---

<u>JOSEPH A. DICKSON, U.S.M.J.</u>

This matter comes before the Court upon Defendants Pathway Holdings Management V,

LLC ("Pathway Holdings") and James Plante's (collectively "Defendants") appeal of this Court's

Opinion and Order on Defendants' Motion to Transfer Venue to the United States Southern

District of California pursuant to 28 U.S.C. §1404(a).  (ECF No. 18).  This Court advised the

parties of its decision to *sua sponte* reconsider the Opinion and Order entered on March 31, 2016.

(ECF No. 21).  In accordance with Rule 78 of the Federal Rules of Civil Procedure, the Court

heard oral argument on October 24, 2016.  Upon careful consideration of the parties' arguments,

submissions and for the reasons stated below, the Court's Order and Opinion denying Defendants

Motion to Transfer this case to the Southern District of California, (ECF No. 16, 17), is

**REVERSED** and Defendants' Motion to transfer is **GRANTED**.

## I.    BACKGROUND

Plaintiff SI Power LLC ("Plaintiff") is a limited liability company, incorporated in Delaware with its principal place of business in New Jersey. (Compl., ECF No. 5-1, ¶ 1). Defendant Pathway Holdings is a limited liability company, incorporated in Delaware with its principal place of business in California. (Id. ¶ 2). Defendant Plante is domiciled in California and is the principal and/or manager of Defendant Pathway Holdings and the founder, president, and CEO of nonparty Pathway Genomics Corporation ("PGC"). (Id. ¶¶ 3, 4; Plante Decl., ECF No. 2-2, ¶ 1).

### a.    2011 Stock Purchase Agreement Between Plaintiff and PGC

Plaintiff purchased shares of Series C Preferred Stock of PGC under a stock purchase agreement dated September 9, 2011 (the "2011 Stock Purchase Agreement"). (Compl., ECF No. 5-1, ¶ 6; Plante Decl., ECF No. 2-2, Ex. 4). The 2011 Stock Purchase Agreement was between Pathway Genomics Corporation and Plaintiff. (Plante Decl., ECF No. 2-2, Ex. 4). Pathway Genomics Corporation is not a party to this suit. (Compl., ECF No. 5-1). Plaintiff alleges that the purchase of the Series C Preferred Stock was based "on misleading information as to the value of such investment provided to [Plaintiff] by Defendants." (Compl., ECF No. 5-1, ¶ 6). The 2011 Stock Purchase Agreement contains the following forum selection clause:

> This Agreement is to be construed in accordance with and governed by the internal laws of the State of California without giving effect to any choice of law rule that would cause the application of the laws and any jurisdiction other than the internal laws of the State of California to the rights and duties of the parties. **All disputes and controversies arising out of or in connection with this Agreement shall be resolved exclusively by the state and federal courts located in San Diego County in the State of California, and each party hereto agrees to submit to the jurisdiction of said courts and agrees that venue shall lie exclusively with such courts.**

2

(Plante Decl., ECF No. 2-2, Ex. 4, § 6.3) (emphasis added).  The 2011 Stock Purchase Agreement also contains a provision relating to the successors and assigns of the agreement:

> Except as otherwise provided herein, the terms and conditions of this Agreement shall inure to the benefit of and be binding upon the respective successors and assigns of the parties (**including transferees of any Shares**).  Nothing in this Agreement, express or implied, is intended to confer upon any party other than the parties hereto or their respective successors and assigns any rights, remedies, obligations, or liabilities under or by reason of this Agreement, except as expressly provided in this Agreement.

(Plante Decl., ECF No. 2-2, Ex. 4, § 6.2) (emphasis added).

### b. 2014 Stock Purchase Agreement Between Plaintiff and Defendant Pathway Holdings

In 2014, Plaintiff, "through its sole owner, Michael Mayman, sought to divest itself of the Pathway Genomics shares which it had purchased in 2011, and to essentially receive a return of its purchase price funds" through an amicable agreement with Defendant Plante.  (Compl., ECF No. 5-1, ¶ 8).  On July 29, 2014, Plaintiff and Defendant Pathway Holdings entered into an agreement whereby Plaintiff "was to deliver back to Defendant Pathway Holdings . . . [Plaintiff's] 1,174,352 shares of Preferred Stock of [PGC], and, in return, Defendant Pathway [Holdings] would pay [Plaintiff] $2,501,369.76 . . . in two equal payments -- $1,250,684.88 at closing (the 'Closing Payment') and the second payment of $1,250,684.88 on or before October 29, 2014 (the 'Deferred Payment')" (the "2014 Stock Purchase Agreement").  (Compl., ECF No. 5-1, ¶ 9).  Unlike the 2011 Stock Purchase Agreement between Plaintiff and PGC, the 2014 Stock Purchase Agreement between Plaintiff and Defendant Pathway Holdings does not contain a forum selection clause. (Plante Decl., ECF No. 2-2, Ex. 4, Ex. 5).

Although the Closing Payment was delivered, "Defendant Pathway, at the direction of Defendant Plante, breached its obligation to deliver the Deferred Payment, on or before October

29, 2014, or at any time since[.]" (Compl., ECF No. 5-1, ¶ 10). Defendants contend that Defendant

"Pathway Holdings has not made the second payment pursuant to the Re-Purchase Agreement due

to its concern that Mayman lacks standing or any authority to accept payment or otherwise act 'on

behalf of SI Power.'" (Plante Decl., ECF No. 2-2, ¶ 12).

### c. The Complaint

Plaintiff alleged causes of actions for: (1) breach of contract; (2) breach of the implied

covenant of good faith and fair dealing; and (3) various allegations of fraud. (ECF No. 5). Count

Three of the Complaint alleges, inter alia, the following:

> 26.    Defendants made numerous representations to SI Power in
> connection with Defendant Pathways sale and SI Power's original
> purchase of Pathway Genomics stock in or about 2011, which
> representations were materially false and/or misleading- including
> with respect to Pathway Genomics operations sales, financial
> statements, and accounting practices-and which were relied on by
> SI Power, to its detriment, in originally purchasing the Pathway
> Genomics stock and in connection with its holding of such stock
> through and including the closing of the 2014 Stock Purchase
> Agreement.
>
> 27.    Defendant Plante authorized, approved, and communicated,
> and has continued to authorize, approve, and communicate, such
> false and misleading representations on behalf of and with respect
> to Defendant Pathway and/or Pathway Genomics, including
> affirmative representations, fraudulent omissions and concealment
> of material information, and half-truths, and including in connection
> with the sale of securities, including Pathway Genomics stock. At
> all relevant times, Defendant Plante was acting in his capacity as an
> officer and "control person" of Defendant Pathway.
>
> 28.    SI Power (and others) detrimentally relied on such
> misrepresentations by Defendants in purchasing and holding
> Pathway Genomics stock.

(ECF No. 5-1 at 7).

4

### d. Procedural History

On June 24, 2015, Plaintiff filed a Complaint in the Bergen County Superior Court of New Jersey. (Notice of Removal, ECF No. 5). Defendants subsequently removed the action to this Court on August 10, 2015. Id.

On August 13, 2015, Defendants filed a Motion to Transfer Pursuant to 28 U.S.C. §1404(a). (ECF No. 2). Defendants argued that the 2011 Stock Purchase Agreement's forum selection clause designating California as the appropriate forum should apply, and that this action should be transferred to the Southern District of California. (Def. Br., ECF No. 2-3). Plaintiff's opposition contends that the 2011 Stock Purchase Agreement's forum selection clause does not apply. (Pl. Opp. Br., ECF No. 9-11).

On March 31, 2016, this Court issued an Opinion and Order denying Defendants' Motion to Transfer Venue to the Southern District of California. (ECF No. 16, 17). There, the Court found that the 2011 Stock Purchase Agreement was superseded by the 2014 Stock Purchase Agreement, therefore, making the closely related doctrine inapplicable. [1]

## II.   LEGAL STANDARD

This Court has reconsidered Sua Sponte and reverses its previous decision. The Court finds that the valid forum selection clause contained in the 2011 Stock Purchase Agreement applies to the claims in this case and mandates its transfer to the Southern District of California. Furthermore, this Court finds that Defendant Plante has demonstrated that he is closely related to

---

[1] Defendants' Notice of Appeal focuses on this Court's previous determination "that the transferee provision in the 2011 Stock Purchase Agreement is superseded by the 2014 Repurchase Agreement. In light of the Entire Agreement provision, the Court finds that the forum selection clause contained in the 2011 Stock Purchase Agreement does not apply to the 2014 Repurchase Agreement." (ECF No. 16 at 12). The Court's earlier analysis regarding the integration clause is now repudiated for the reasons set forth in Defendant's brief on Appeal of that Opinion.

the 2011 Stock Purchase Agreement and Defendant Pathway Holdings is a transferee pursuant to that agreement.

Defendants request that this Court transfer this action to the Southern District of California pursuant to 28 U.S.C. §1404(a). (Def. Br., ECF No. 2-3, at 1). This statute provides, in pertinent part, "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. §1404(a). The purpose of §1404(a) is to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (internal quotations and citations omitted). The decision of whether to transfer a case is committed to the trial court's sound discretion. Cadapult Graphic Sys. v. Tektronix, Inc., 98 F. Supp. 2d 560, 564 (D.N.J. 2000); Days Inns Worldwide, Inc. v. RAM Lodging, LLC, No. 09-2275, 2010 WL 1540926, at *2 (D.N.J. April 14, 2010).

"When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." Atlantic Marine Constr. Co., Inc. v. United States Dist. Court, 134 S. Ct. 568, 581 (2013). Those forum selection clauses "may be enforced through a motion to transfer under §1404(a)." Id. at 579. "Within this framework, a forum selection clause generally is treated as a manifestation of the parties' preferences as to a convenient forum." Jumara v. State Farm Ins. Co. 55 F. 3d 873, 880 (3d Cir. 1995). Where a forum selection clause exists, the Supreme Court has ruled that the analysis changes:

> [A] court evaluating a defendant's §1404 (a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests. When parties agree to a forum-selection clause they waive the right to challenge the preselected forum as an inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly

6

> must deem the private-interest factors to weigh entirely in favor of the pre-selected forum. As a consequence, a district court may consider arguments about public-interest factors only. . .
>
> Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases. . . .
>
> [W]hen a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-- of-law rules-- a factor that in some circumstances may affect public-interest considerations. . .

Atlantic Marine, 134 S. Ct. at 581-82.

### III.   LEGAL DISCUSSION

####   a.   The 2011 Stock Purchase Agreement's Forum Selection Clause Applies to Plaintiff's Claims

First this Court will consider whether the forum selection clause applies to the claims at issue. Defendant argues that Count III of Plaintiff's Complaint contains fraud claims that stem from Plaintiff's purchase of the PGC shares under the 2011 Stock Purchase Agreement. (ECF No. 18 at 26). Defendants contend that "Plaintiff explicitly alleges that Defendants made materially false and misleading statements "in connection with" Plaintiff's original purchase of PGC stock." (ECF No. 12 at 11) (emphasis removed). Defendants argue that the fraud claim triggers the forum selection clause in the 2011 Stock Purchase Agreement and the entire action should be transferred, "even if some of the claims are not subject to the forum-selection clause." (ECF No. 12 at 16).

Plaintiff, on the other hand, argues that Count Three does not implicate the forum selection clause contained in the 2011 Stock Purchase Agreement because the fraud allegations made against the defendants "relate not only to the original 2011 sale of Pathway Genomics stock, but also to SI Power's holding of such stock through and including the closing of the 2014 Stock Purchase Agreement." (ECF No. 9 at 19). Furthermore, Plaintiff argues that even if Count Three relates to

7

the 2011 Stock Purchase Agreement, it is "not seeking contractual rights and remedies." (ECF No. 9 at 19). Plaintiff cites to General Environmental Science Corp. v. Horsfall, 753 F. Supp. 664, 668 (N.D. Ohio 1990) to argue that in order for the parties to be bound by the forum selection clause when bringing a fraud claim, the party must be able to "reasonably foresee being bound by that clause." (ECF No. 9 at 19). Furthermore, Plaintiff cites to, Hay Acquisition Co. v. Schneider, No. 04-cv-1236, 2005 WL 1017804, at *6 (E.D. Pa. Apr. 27, 2005), to argue that in order for the forum selection clause to apply to a tort claim such as fraud, the "viability" of the claims should depend on the contract containing the forum selection clause. (ECF No. 9 at 19). Plaintiff argues that even without the 2011 Stock Purchase Agreement, "Plaintiff's allegations concerning its continued reliance of Defendant's misrepresentations, through the formation of the 2014 Stock Purchase Agreement, remain viable." (ECF No. 9 at 20).

This Court agrees with Defendant that the fraud count in Plaintiff's Complaint arises out of the 2011 Stock Purchase Agreement. The forum selection clause's reach, in terms of the disputes covered, clearly includes the fraud claim. As mentioned above, the clause applies to "[a]ll disputes and controversies *arising out* of or *in connection with* this Agreement..." (Plante Decl., ECF No. 2-2, Ex. 4, § 6.3) (emphasis added). Furthermore, the Third Circuit has held that, "pleading alternate non-contractual theories is not alone enough to avoid a forum selection clause if the claims asserted arise out of the contractual relation and implicate the contract's terms." Crescent, Int'l, Inc. V. Avatar Communities, Inc., 857 F. 2d 943, 945 (1988). The misrepresentations alleged by Plaintiff must by logical inference arise out of the 2011 Stock Purchase Agreement.

Defendants argue that the forum selection clause also applies to Plaintiff's breach of contract claims. Defendants contend, "[t]he 2011 Agreement's forum selection clause ("FSC") mandates that 'all disputes and controversies arising under *or in connection with*' that Agreement must be brought exclusively in the federal or state courts located in San Diego County, California." (ECF No. 31 at 2). Defendants point to Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA, 779 F. 3d 214 (2014), in support of their argument that the language contained in the forum selection clause, "in connection with," embraces the breach of contract claims. (ECF No. 31 at 3). "Because the 'in connection with' FSC in the 2011 Agreement is at least as broad as the "with respect to' FSC in the Carlyle subscription agreement, Carlyle is directly on point and dictates that the 2011 Agreement's FSC embraces Plaintiff's two breach claims (in addition to its fraud claim)." Id. Moreover, Defendants assert that "Plaintiff's two breach claims indisputably 'stem from' the 2011 Agreement even though they seek to enforce duties expressed and implied in the 2014 Agreement." Id.

Plaintiff, on the other hand, argues that Carlyle is distinguishable from the facts in this case. "Unlike in Carlyle, the instant dispute does not involve SI Power seeking to litigate in federal court, contrary to two separate choice of forum provisions, but, rather, SI Power's effort to have its home state's courts enforce the Deferred Payment provision in the July 201[4] Agreement where that agreement did not exclude that forum choice." (ECF No. 30 at 3). Plaintiff did not address Defendant's argument that the language in the 2011 Stock Purchase Agreement's forum selection clause can be interpreted to "embrace" the breach of contract claims.

In Carlyle Inv. Mgmt. LLC v. Moonmouth Co, SA, 779 F. 3d 214 (2014), the plaintiff commenced the action in the Delaware Court of Chancery. There, the plaintiff brought suit against the defendant to enforce "releases from liability contained" in a transfer agreement and a

9

subscription agreement. Defendant, Plaza Management Overseas, removed the case to federal court. In response, the plaintiff moved to remand the case back to state court pursuant to a forum selection clause contained in the subscription agreement. The parties were not signatories to the subscription agreement. Id. at 216. The affiliates of both parties were signatories to the subscription agreement. The parties, on the other hand, were signatories to the subsequent "transfer agreements" entered into years after the execution of the subscription agreement. Id. at 217. The plaintiff argued that the case should be remanded back to the Delaware State courts. The District Court granted plaintiffs motion. As a result, the defendant appealed to the United States Court of Appeals for the Third Circuit. The forum selection clause included the language, "with respect to this Subscription Agreement. . ." Id. at 220. The Third Circuit found that "[c]ourts generally interpret language in a forum clause encompassing any claims 'with respect to' an agreement broadly to mean "connected by reason of an established or discoverable relation," Id. (citing Huffington v. T.C. Grp., LLC, 637 F. 3d 18, 22 (1st Cir. 2011). Moreover, The Third Circuit found that, "[a]lthough the releases Carlyle seeks to enforce were part of later agreements, the defendants would not have any claims, nor would Carlyle need to seek release from any claims, but for the original Subscription Agreement, that contains the forum selection clause." Carlyle, 779 F. 3d 214 at 220. The Third Circuit affirmed the lower court's decision and held that the forum selection clause in the subscription agreement applied.

In the matter at hand, the question is whether the breach of contract claims in this case are "in connection with" the 2011 Agreement. Carlyle, 779 F. 3d at 220. The Court agrees with Defendants that the language in the forum selection clause is broad and encompasses Plaintiff's two breach of contract claims. Moreover, the parties' relationship stems from the initial investment performed under the 2011 Stock Purchase Agreement. Plaintiff would not have

10

brought the breach of contract claims "but for" the initial investment of stock agreed upon in the 2011 Agreement." (ECF No. 31 at 3).[2]

### b. Defendants May Invoke the Forum Selection Clause

The next step, then, would be to determine whether the non-signatory Defendants Plante and Pathway Holdings may invoke the forum selection clause. Defendant Plante argues that although he is not a signatory to the 2011 Stock Purchase Agreement, he is "closely related" and, therefore, may invoke the forum selection clause in the contract. "Ordinarily, a party not a signatory to a contract cannot be bound by the terms of that contract. As a general matter, the Third Circuit is reluctant to enforce a contractual clause against a non-party, unless 'accepted principals of agency or contract' make it appropriate." Beth Schiffer Fine Photographic Arts, Inc. v. Colex Imaging, Inc., No. 10-cv-5321 (WHW), 2014 U.S Dist. LEXIS 65338, * 9 (D.N.J. May 13, 2014) (quoting E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S., 269 F.3d 187, 194, 202 (3d Cir. 2001)); Bedwell Co. v. Camden County Improvement Auth., No. 14-cv-1531 (JEI), 2014 U.S. Dist. LEXIS 95510, *8 (D.N.J. July 14, 2014) ("Except for limited circumstances not present here, a contract cannot define the legal obligations between two entities unless those two entities are parties to the contract.").

In the context of forum selection clauses, courts in this District have typically limited enforcement against non-signatories to situations in which the non-signatory is either: (1) a third-party beneficiary of the contract containing the clause; or (2) so closely related to the contractual relationship at issue that the party should be able to foresee that courts will enforce the clause

---

[2] The Court notes that it's ruling in this section is not necessary to the ultimate ruling herein because of its holding that Plante may invoke the forum selection clause and Carlyle prohibits piecemeal litigation. See also section "d." below denying Plaintiff's leave to amend the Complaint.

11

against it. See, e.g., Beth Schiffer Fine Photographic Arts, Inc., 2014 U.S. Dist. LEXIS 65338 at *9-10; Donachy v. Intrawest U.S. Holdings, Inc., No. 10-4038 (RMB), 2011 U.S. Dist. LEXIS 79567, *6-7 (D.N.J. July 21, 2011) (collecting cases and noting enforcement of forum selection clauses against related parties and third party beneficiaries); cf. D'Elia v. Grand Caribbean Co., No. 09-cv-1701 (NLH), 2010 U.S. Dist. LEXIS 32230, *10 (D.N.J. Mar. 30, 2010) (noting that a non-party to a contract may enforce a forum selection clause contained in that contract "if that party is a third-party beneficiary of the contract or is closely related to the contractual relationship or dispute such that it is foreseeable that the party will be bound."). Defendants argue that Defendant Plante is so closely-related to the contractual relationship between Plaintiff and PGC that Defendant Plante should be able to enforce the forum selection clause. (See generally Def. Br., ECF No. 2-3, at 9).

Courts in this District have analyzed the closely related doctrine and their guidance is instructive. In Foley & Lewis Racing, Inc., the plaintiff argued that the defendant lacked standing to enforce the forum selection clause because the defendant did not sign the agreement in his individual capacity, but rather, as CEO of the company. Foley & Lewis Racing, Inc. v. Burling, 2008 WL 544655, *1-2 (D.N.J. Feb. 27, 2008). The Hon. Joseph E. Irenas, U.S.D.J., found that an owner and CEO of a company, who signed an agreement with the plaintiff on behalf of his company, was so closely related to the contractual relationship that the forum selection clause applied to him as a third party. Id. at *3.

In Four River Expl., the Hon. Joel A. Pisano, U.S.D.J., remanded a case to the Superior Court of New Jersey given the forum selection clause in the parties' contract. Four River Expl. LLC v. Bird Res., Inc., 2010 WL 216369, *1 (D.N.J. Jan. 15, 2010). In that case there were two defendants, a company and its president. Id. Judge Pisano found the company's president to be

closely related to the contract because he was "very substantially involved in providing the services required by the parties' Agreement.  [The individual defendant's] position as president and his involvement with the services outlined in the Agreement make it foreseeable that he would be required to appear in a court located in Ocean County, New Jersey." Id. at *3.

In the matter at hand, Plante has standing to invoke the forum selection clause. Plaintiff alleges Plante was involved in negotiations of the 2011 Stock Purchase Agreement and "Plante authorized, approved, and communicated, and has continued to authorize, approve and communicate, such false and misleading representations on behalf of and with respect to Defendant Pathway and/or Pathway Genomics..." (ECF No. 5-1, at 8). Moreover, as President of PGC, Plante executed the 2011 Stock Purchase Agreement on behalf of PGC. There is no doubt that if Plante had been accused of breaching the 2011 Stock Purchase Agreement, he would have no trouble invoking the clause. Accordingly, the art of pleading should not deprive him of that right.

Furthermore, Defendant Pathway Holdings is a transferee and may enforce the forum selection clause. As noted above, the 2011 Stock Purchase Agreement states, "[e]xcept as otherwise provided herein, the terms and conditions of this Agreement shall inure to the benefit of and be binding upon the respective successors and assigns of the parties (*including transferees of any Shares*)." (Plante Decl., ECF No. 2-2, Ex. 4, § 6.2) (emphasis added).  Since Defendant Pathway Holdings contracted with Plaintiff to re-purchase the PGC shares, Defendant is a transferee and therefore may avail itself (and would be bound by) the forum selection clause contained in the 2011 Stock Purchase Agreement.

### c. *Jumara* Analysis

In determining whether to transfer a matter pursuant to § 1404(a), and based on the plain language of that statute, a court must consider: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice. Rappaport v. Steven Spielberg, Inc., 16 F. Supp. 2d 481, 497 (D.N.J. 1998). In addition to these statutory factors, the United States Court of Appeals for the Third Circuit has established a list of public and private interests that a court should examine when deciding whether to transfer an action:

> The private interests have included: plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).
>
> The public interests have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

Jumara v. State Farm Ins. Co., 55 F.3d 873, 879-80 (3d Cir. 1995).

### i. The Jumara Factors Require Granting of this Motion to Transfer

Plaintiff argues that in weighing the private and public interest factors that the Court of Appeals discussed in Jumara, "courts are to assign the plaintiff's choice of forum significant weight." (ECF No. 9, at 13 citing, Mkt. Transition Facility of New Jersey v. Twena, 941 F. Supp. 462, 467 (D.N.J. 1996)). However, "[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in the clause. Only under extraordinary circumstances unrelated to the convenience of the parties should

14

a §1404 motion be denied." Atlantic Marine, 134 S. Ct. at 581. As discussed above the Supreme Court has ruled that the analysis changes when a forum selection clause exists. Id. at 581-82. (emphasis added).[3]

If there is a *valid* forum selection clause entered by the parties to have disputes resolved in a particular jurisdiction, the forum selection clause must be enforced. Atlantic Marine, 134 S. Ct. at 581. (emphasis added). A forum selection clause is presumptively valid and enforceable unless the non-moving party establishes "(1) that it is the result of fraud or overreaching; (2) that enforcement would violate strong public policy of the forum; or (3) that enforcement would in the particular circumstances of the case result in jurisdiction so seriously inconvenient as to be unreasonable." MoneyGram Payment Sys. v. Consorcio Oriental, S.A., 2003 U.S. App. LEXIS 9875 (3d Cir. 2003) (citing Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd., 709 F.2d 190 (3d Cir. 1983)). Here, plaintiff does not argue that the forum selection clause is invalid. Instead, plaintiff argues that the forum selection clause is not applicable. Therefore, the Court does not need to analyze the validity of the clause.

The Court must now analyze the public interest factors relevant to Defendant's transfer application. As discussed above, the United States Court of Appeals for the Third Circuit enumerated those factors in Jumara, 55 F.3d at 879-80. Usually, when deciding whether transfer

---

[3] When conducting a §1404 analysis, the Court usually must decide whether the transferee district would have proper jurisdiction and venue, such that the case could have been brought in the transferee district in the first instance. Lawrence v. Xerox Corp., 56 F. Supp. 2d 442, 450 (D.N.J. 1999). Where a valid forum selection clause exists, however, it is not necessary for the Court to determine whether venue is proper because the parties consented to venue in the forum. As discussed, Defendant Plante is closely related to the 2011 Stock Purchase Agreement that contains the forum selection clause and Defendant Pathway Holdings is a transferee under the 2011 Agreement. As all parties are bound under the forum selection clause they have consented to venue in the Southern District of California, therefore, obviating the need for an independent analysis under 28 U.S.C. §1391.

is appropriate, the movant retains the burden of establishing that transfer is appropriate. In re Amendt, 169 F. App'x 93, 96 (3d Cir. 2006). However, pursuant to Atlantic Marine, when a forum selection clause exists, the "party defying the forum selection …bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." Atlantic Marine, 134 S. Ct. at 581.

### ii.   Public Interest Factors Weigh in Favor of Transfer

Pursuant to Atlantic Marine each of the private interest factors "weigh entirely in favor of the preselected forum." Atlantic Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex., 134 S. Ct. 568, 582 (2013). Therefore, only the public interest factors are to be considered. See Atlantic Marine, 134 S. Ct. at 582.

The Third Circuit has directed courts to take certain "public interest" factors into account when adjudicating a motion to transfer, including: "the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home, the public policies of the fora, and the familiarity of the trial judge with the applicable state law in diversity cases." Jumara, 55 F.3d at 879-80. The Court will address each of these factors in turn.

### 1.   Enforceability of Judgments

The "enforceability of the judgment" factor is neutral, as a judgment rendered in either this District or the Southern District of California could easily be registered in another district.

### 2.   Practical Considerations Regarding Trial

"[P]ractical considerations are relevant and warrant transfer if they could make the trial easy, expeditious, or inexpensive. One practical consideration that supports transfer is efficiency."

16

Metro. Life Ins. Co. v. Bank One, N.A., No. 03-1882 (SDW), 2012 U.S. Dist. LEXIS 137119, *
21 (D.N.J. Sept. 25, 2012). Defendants argue that both PGC and Defendant Pathway Holdings
principal place of business is in California, which is "likely to be more accessible for the parties
in the Southern District of California." (Def. Br., ECF No. 2-3, at 11). Plaintiff's principal place
of business is, however, in New Jersey. While it may be more accessible for the <u>Defendants</u> to
litigate in the Southern District of California, Defendants have not argued why transfer to
California would be <u>more</u> efficient, especially in light of Plaintiff's principal place of business in
New Jersey. This factor is, therefore, neutral to the transfer analysis.

### 3. <u>Relative Administrative Difficulty</u>

The Third Circuit also requires that Courts consider the administrative difficulties
associated with proceeding in either district, in light of the relative docket congestion of the forum.
Jumara, 55 F.3d at 879. Defendants argue that according to the Federal Court Management
Statistics of 2014, this Court has significantly more cases than the Southern District of California,
and therefore, this factor weighs in favor of transfer. (Pl. Opp. Br., ECF No. 2-3, at 11-12). While
this Court recognizes that both Districts have large caseloads, this factor does in fact weigh in
favor of transfer. In June of 2015, the filings in this District totaled to 10,435, while the total
filings in the Southern District of California totaled to 8,527. See Administrative Office of the
United States Courts, Federal Court Management Statistics 2014: District Courts, available at
http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2015/06/30-3.
Additionally, the weighted filings per judgeship in this District number 704, while the Southern
District of California number 489. See Id. This factor weighs in favor of transfer.

17

#### 4. Local Interests /Public Policies of the Forum

The Court also finds that the local interests in deciding a local controversy and the public policies of the forum to be neutral in the evaluation of these factors. Defendants concede that these factors are neutral, (Def. Br., ECF No. 2-3, at 12), and Plaintiff fails to address them. While the Court recognizes that, "if there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor." In re Hoffmann-La Roche Inc., 587 F.3d 1333, 1338 (Fed. Cir. 2009). The evidence in the record does not establish any such significant connections.

#### 5. The Judges' Familiarity With The Applicable State Law

As discussed above, the claims in the Complaint arise out of the 2011 Stock Purchase Agreement and the 2014 Stock Purchase Agreement. Both agreements contain a choice of law clause. California law applies to the 2011 Stock Purchase Agreement and Delaware law applies to the 2014 Stock Purchase Agreement. (Plante Decl., ECF No. 2-2, Ex. 4, 2011 SPA, ¶ 6.3; Plante Decl., ECF No. 2-2, Ex. 4, Ex. 5, ¶ 9.1). As New Jersey law does not apply to this matter, this factor weighs in favor of transfer.

After considering the public interest factors, this Court finds that transfer is appropriate under 28 U.S.C. § 1404(a). The overwhelming majority of factors are neutral to this analysis. Specifically, the administrative difficulty and choice of law clauses in the agreements are the only factors bearing weight on this matter. Furthermore, there is a valid forum selection clause in this matter and Plaintiff has failed to demonstrate that extraordinary circumstances exist to prevent the transfer. Therefore, this action should be transferred to the Southern District of California.

18

**d.  Plaintiff's Motion for Leave to File an Amended Complaint is Denied**

Finally, in Plaintiff's November 1, 2016 reply letter, Plaintiff requested leave to amend its complaint and remove without prejudice Paragraphs 26 through 28 of Count III of the Complaint. Plaintiff contends, "[w]ith such an Amended Complaint, all remaining claims would derive solely from the July 2014 Agreement (for breach of contract, for breach of the implied covenant of good faith and fair dealing, and for fraudulent inducement of that contract." (ECF No. 30 at 4).

As discussed above, the forum selection clause would apply even after removing the fraud claims.    Furthermore, permitting Plaintiff to amend its Complaint would invite "piecemeal litigation." See Carlyle Inv. Management LLC v. Monmouth CO. SA, 779 F. 3d 214, 221 (3d Cir. 2015) (citing Crescent, Int'l, Inc. V. Avatar Communities, Inc., 857 F. 2d at 945)). Therefore, Plaintiff's motion for leave to file an amended complaint is denied.

## IV.    CONCLUSION

This Court has *sua sponte* reconsidered the Opinion and Order entered on March 31, 2016. (ECF No. 21). For the foregoing reasons, the Court's Opinion and Order, (ECF No. 16, 17), are **REVERSED** and Defendants' Motion to Transfer, (ECF No. 2), is **GRANTED.** An appropriate form of Order accompanies this Opinion.

_____   12/7/16
JOSEPH A. DICKSON, U.S.M.J.

cc:    Hon. Esther Salas, U.S.D.J.

19